UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MELANIE S.                              :
                                        :
v.                                      :        C.A. No. 18-00369-JJM
                                        :
ANDREW SAUL, Commissioner               :
of the Social Security Administration   :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on July 3, 2018 seeking to reverse the Decision of the Commissioner. On February 28, 2019, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security. (ECF Doc. No. 12). On April 18, 2019, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF Doc. No. 15). On May 9, 2019, Plaintiff filed a Reply Brief. (ECF Doc. No. 17).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion for Reversal (ECF Doc. No. 12) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 15) be GRANTED.

### I.      PROCEDURAL HISTORY

Plaintiff filed an application for SSI on March 4, 2015 (Tr. 224-232) alleging disability since August 24, 2011. The application was denied initially on July 24, 2015 (Tr. 152-160) and on

reconsideration on January 25, 2016. (Tr. 162-174). Plaintiff requested an Administrative Hearing. On January 23, 2017, a hearing was held before Administrative Law Judge Paul W. Goodale (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 66-132). The ALJ issued an unfavorable decision to Plaintiff on July 6, 2017. (Tr. 23-48). The Appeals Council denied Plaintiff's request for review on May 4, 2018. (Tr. 1-6). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence and her credibility. She also contends that the Appeals Council was egregiously mistaken when it determined that newly submitted evidence did not show a reasonable probability of changing the outcome of her application.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's RFC and non-disability findings are supported by the record and must be affirmed. The Commissioner also counters that the record does not support Plaintiff's claim of an "egregious" Appeals Council error.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v.

Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726,

729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making

the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable

the ALJ to render an informed decision.  <u>Carrillo Marin v. Sec'y of HHS</u>, 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.    Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform

work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.   APPLICATION AND ANALYSIS

### A.   The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ found that Plaintiff suffered from the following "severe" impairments: spondylosis of lumbar spine, status post spinal fusion, obsessive compulsive disorder, carpal tunnel syndrome, left wrist, status post right carpal tunnel release, obesity, depression disorder and anxiety disorder (20 C.R.R. 416.920(c)).  (Tr. 28).  The ALJ concluded at Step 3 that these impairments did not meet or medically equal any of the Listings.  (Tr. 30).  As to RFC, the ALJ concluded that Plaintiff could perform a limited range of light work.  (Tr. 33).  Based on this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past

relevant work. (Tr. 42). However, he found at Step 5 that Plaintiff could perform certain light, unskilled jobs and thus was not disabled. (Tr. 42-44).

After the ALJ's decision, Plaintiff sought Appeals Council review and submitted additional medical records. These treatment records were from Quality Behavioral Health and covered the period from January 31, 2017 to February 12, 2018. (Tr. 49). The Appeals Council determined that the medical records dated July 7, 2017 to February 12, 2018 were irrelevant since the ALJ decided whether Plaintiff was disabled on or before July 6, 2017. (Tr. 2). As to the earlier records, the Appeals Council found that such evidence "does not show a reasonable probability that it would change the outcome of the decision." Id.

### B. The Appeals Council Decision

Plaintiff argues that the Appeals Council was "egregiously mistaken" when it determined that certain, newly-submitted treatment notes from Quality Behavioral Health did not show a "reasonable probability" that they would change the outcome. (ECF Doc. No. 12-1 at p. 29). Plaintiff describes these treatment notes as "new and material" evidence that "clearly relates to [her] capacity for sustained full-time work" during the relevant time period. Id. at p. 30. Plaintiff concludes that it was an "egregious error" for the Appeals Council not to remand this claim to the ALJ for the purposes of evaluating this "new and material" evidence. Id. at p. 31.

Generally, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable. A judicial review under 42 U.S.C. § 405(g) is typically focused on the findings and reasoning of the ALJ, i.e., whether the ALJ's findings are supported by substantial evidence and whether the ALJ properly applied the law. Of course, it makes no sense from an efficiency standpoint for a reviewing court to spend time and resources critiquing the work of the Appeals Council when it has jurisdiction to review the underlying and operative

ALJ decision.  In other words, reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.

The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision."  Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  In such cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action."  Id.  This avenue of review has been described as "exceedingly narrow."  Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006).  Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant."  Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed. 1999)).

In Mills, the First Circuit recognized that an Appeals Council denial of a request for review has all the "hallmarks" of an unreviewable, discretionary decision.  Mills, 244 F.3d at 5.  The Appeals Council is given a great deal of latitude under the regulations and "need not and often does not give reasons" for its decisions.  Id.  Thus, the First Circuit "assume[d] that the Appeals Council's refusal to review would be effectively unreviewable if no reason were given for the refusal."  Id. at p. 6.  It did, however, create a narrow exception for review when the Appeals Council "gives an egregiously mistaken ground for [its] action."  Id. at p. 5.  The First Circuit did not find this result to be a "serious anomaly" because "there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year."  Id. at p. 6.

The issue presented focuses on the medical records submitted and whether there is a reasonable probability that they would have changed the outcome.  Of course, as discussed above, the Appeals Council's determination must be viewed by this Court through the egregious error

lens.  Although Plaintiff delves deeply into the caselaw and comments on the "unfairness" of Social Security Ruling ("SSR") 11-1p[1] (ECF Doc. No. 12-1 at p. 31), she fails to substantively discuss any of the "new" treatment records in question.  Her conclusory statements regarding the records fall far short of convincing the Court that the Appeals Council's "reasonable probability" conclusion was "egregiously mistaken."  However, out of fairness, the Court fully reviewed the records in question (Tr. 7-20, 49-65) in applying the <u>Mills</u> standard.

The Appeals Council accurately distinguished between records that relate to the relevant period (Tr. 50-65) and those that post-date the ALJ's decision.  (Tr. 7-20).  (<u>See</u> Tr. 2).  Since there is nothing retrospective recorded in the latter group of records, the Appeals Council reasonably characterized them as irrelevant to the period under consideration, <u>i.e.</u>, disability on or before July 6, 2017.  As to the earlier records, the Appeals Council's determination that they did not show a reasonable probability of changing the outcome is entirely reasonably upon review of the records.  Plaintiff has neither argued nor shown that these records differ materially from the medical evidence considered by the ALJ.  These records reflect ongoing therapy appointments with a counsellor (Ms. Day) and periodic medication appointments with a psychiatrist (Dr. Kisch).  The records are also consistent with other records of Ms. Day and Dr. Kisch reviewed and discussed by the ALJ in making his RFC determination.  (Tr. 38-40).  The bottom line is that neither Plaintiff's conclusory argument nor the treatment records themselves support an "egregious" error finding.

---

[1]    SSR 11-1p generally prevents a claimant from filing a new claim if a prior application is under Appeals Council review.  Plaintiff argues that it was "enacted to discourage appeals."  (ECF Doc. No. 12-1 at p. 31).  The intent or fairness of SSR 11-1p is beyond the scope of this appeal.

### C. Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff essentially asks this Court to reweigh the evidence in her favor by assigning more weight and deference to her Therapist Ms. Day's opinions and less weight to the findings of Dr. Turchetta, a state agency consultation examiner, and two state agency reviewing consultants. In reviewing the record, however, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the ALJ. See Colon v. Sec'y of HHS, 877 F.2d 148, 153 (1st Cir. 1989) (per curiam). "[T]he resolution of conflicts in the evidence is for the [ALJ], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (citing Rodriguez, 647 F.2d at 222). Substantial evidence supports the ALJ's weighing of the opinion evidence. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high….It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation marks and citations omitted).

First, it is undisputed that Ms. Day, a licensed mental heath clinician, does not qualify as an "acceptable medical source" pursuant to 20 C.F.R. § 416.902(a). (ECF Doc. No. 12-1 at p. 18). However, Plaintiff appears to argue the ALJ erred because he failed to provide "good reasons" for only assigning partial weight to Ms. Day's opinion and does not evaluate her opinion under the same criteria as licensed physicians and psychologists for "supportability" and "consistency." Id. at 19, citing 20 C.F.R. §§ 416.927. Thus, Plaintiff arguably attempts to extend the standard applied to "acceptable medical sources" and apply it to "other medical sources," such as Ms. Day. See SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006). First, it is well established that the "ALJ [was] not required to give 'good reasons' for treatment of [a] non-physician opinion." Pelletier v.

Colvin, No. 13-651 ML, 2015 WL 247711, at *14 (D.R.I. Jan. 20, 2015) (quoting Martinez v. Astrue, No. 12-30075 FDS, 2013 WL 4010507, at *10 (D. Mass. Aug. 2, 2013)). Rather, "[a]t most, he was obligated to explain his reasoning in a manner that is possible for subsequent reviewers to follow." Id. Second, an ALJ need not consult the factors listed in 20 C.F.R. § 416.927(c)-(2)-(6) when evaluating "other medical source" opinions because these factors are only required for "acceptable medical sources." See, e.g., Taylor v. Astrue, 899 F. Supp. 2d 83, 88-89 (D. Mass. 2012); Martinez, 2013 WL 4010507, at *9. Specifically, the factors cited by Plaintiff are contained in a provision discussing how the Agency weighs "medical opinions," which are defined in the same regulation as "statements from acceptable medical sources." See 20 C.F.R. § 416.927(a)(1); see also SSR 06-3p, 2006 WL 2329939, at *4 ("[T]he factors in 20 C.F.R. §…416.927[c] explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources'….").

Here, the ALJ provided sufficient explanation for his assignment of partial weight to Ms. Day's opinions set forth in the January 16, 2017 RFC questionnaire (Tr. 541-544), and his findings are supported by substantial evidence. The ALJ reasonably concluded that Ms. Day's opinion of Plaintiff's limitations and the impact on her functioning was not supported by her own treatment notes. (Tr. 40). Contrary to Plaintiff's assertions, it is reasonable to interpret Ms. Day's notes as generally reflecting only mild/moderate impairments that improved with counseling and medication. More specifically, the ALJ reasonably observed Ms. Day's assignment of a GAF score of 60, which was indicative of "moderate, bordering on mild, symptoms." Id. citing Tr. 483. Further, the ALJ accurately noted that Ms. Day's recommendation that Plaintiff search for a "more slow-paced job" was also inconsistent with her RFC opinions. Id., citing Tr. 515.

Plaintiff describes the ALJ's reference to Ms. Day's recommendation that she should search for a "slower-paced job" (Tr. 515) as improper "cherry pick[ing]." (ECF Doc. No. 12-1 at p. 20). However, Ms. Day's recommendation that Plaintiff seek out "slower-paced" jobs was consistent with her other treatment notes that included seeking work as part of Plaintiff's behavioral plans. (Tr. 512, 547). Here, the ALJ was certainly entitled to consider evidence that reasonably suggested Ms. Day's opinion about Plaintiff's work-related limitations was inconsistent with her own treatment notes. The ALJ simply cited the inconsistency between Ms. Day's recommendation about finding work and her later opinion that Plaintiff was severely limited in her mental ability to work; this was not improper "cherry picking." Moreover, Plaintiff self-reported and testified that she is unable to work primarily because of her physical impairments, not her mental impairments. (Tr. 85, 98, 399).

Plaintiff has also shown no error in the ALJ's evaluation of Dr. Turchetta's and Dr. Coyle's opinions. While Plaintiff argues that the ALJ's decision was "cryptic" with regard to the treatment of Dr. Turchetta's opinion, (ECF Doc. No. 12-1 at p. 23), the ALJ explained that he accorded some weight to Dr. Turchetta's opinion because it was only partially consistent with his objective findings during his examination of Plaintiff. (Tr. 41, citing Tr. 399-402). He further reasonably noted that Dr. Turchetta's opinion was consistent with Plaintiff's testimony that her claim was based primarily on her back impairment, and that Dr. Turchetta's assessment of moderate levels of anxiety and depression was consistent with the other medical evidence that indicated mild to moderate symptoms in functioning that were managed via therapy and medication. Id., citing Tr. 399. As to Dr. Coyle, the ALJ explained that he afforded her opinion partial weight because it was consistent with Ms. Bessennett's assessment that Plaintiff's symptoms were generally mild.

(Tr. 40, <u>citing</u> Tr. 348, 356).  However, the ALJ ultimately found that Plaintiff had <u>greater</u> limitations than those contained in Dr. Coyle's opinion, and ultimately determined that Plaintiff experiences moderate limitations in her ability to concentrate, persist and maintain pace.  (Tr. 40).

Plaintiff further claims Dr. Turchetta's and Dr. Coyle's opinions are flawed because they do not address off-task time and absenteeism about which Ms. Day opined and the VE testified. (ECF Doc. No. 12-1 at p. 22).  First, Dr. Coyle at least implicitly addressed staying on task and absenteeism because she found that Plaintiff's mental impairments were "not severe" (Tr. 168) which indicates her opinion that Plaintiff's mental impairments would not be significantly limiting. <u>See</u> 20 C.F.R. § 416.920(c).  Second, simply because the VE was asked about the impact of an alternative hypothetical about time off task or days absent from work does not mean that the ALJ had to incorporate that testimony as part of the RFC where the premise of the hypothetical question was inconsistent with the limitations the ALJ found credible.  Third, there is no persuasive evidence in the record regarding absenteeism or time off task to support Ms. Day's opinions.  To the contrary, Ms. Day's treatment notes and RFC questionnaire, as well as Plaintiff's testimony, evidence that Plaintiff was able to overcome her anxiety by "forc[ing] [her]self to get out" (Tr. 542) and leave the house for existing commitments such as picking up and dropping off her children at school (Tr. 106, 513), attending doctor appointments (Tr. 106, 505, 513), vacations (Tr. 497), and, most importantly, work.  (Tr. 547).  Without any evidentiary support or further explanation, the ALJ's decision to discredit Ms. Day's conclusory "checkbox" responses on this portion of the RFC questionnaire is not reversible error.

Finally, Plaintiff argues that the ALJ afforded too much weight to Dr. Upadhyay's opinion on her physical limitations because it was "stale and not based on the record as a whole."  (ECF

Doc. No. 12-1 at pp. 24-25). The Commissioner counters that this argument is "meritless." (ECF Doc. No. 15-1 at p. 21).

As to her carpal tunnel syndrome, Plaintiff claims in conclusory fashion that Dr. Upadhyay's opinion that she had no manipulative limitations is "unsupportable." (ECF Doc. No. 12-1 at p. 24). However, Dr. Upadhyay addressed all of Plaintiff's medical records concerning her carpal tunnel syndrome. (Tr. 162-174). He noted Plaintiff's initial complaints of bilateral hand numbness and tingling, Dr. Brennan's diagnosis of bilateral carpal tunnel syndrome, which was confirmed by EMG, and subsequent carpal tunnel release surgery on the right (dominant) hand. (Tr. 168, 171). Dr. Upadhyay further noted Dr. Brennan's last evaluation of Plaintiff's condition three weeks post-surgery assessing that she had normal range of motion and strength, and that there was no evidence of hand function compromise. (Tr. 171). Though Plaintiff asserts that Dr. Upadhyay "misread" Dr. Brennan's notes because he did not mention advice that she "take it easy" eight days post-surgery when her sutures were removed (Tr. 395), Dr. Brennan's final impression of Plaintiff's condition post-surgery was that Plaintiff had full range of motion, and activity and use was permitted as tolerated. (Tr. 394). Moreover, Plaintiff later testified that this surgery was helpful. (Tr. 102).

Plaintiff also suggests that the ALJ should have included greater manipulative limitations in the RFC. But, the ALJ reasonably afforded great weight to Dr. Upadhyay's opinion that Plaintiff had no manipulative limitations based on the aforementioned record. (Tr. 40-41, citing Tr. 172). Plaintiff fails to specifically identify what greater limitations she had for either hand or the medical evidence supporting her position. Though Plaintiff testified that she planned to meet with Dr. Bica and/or Dr. Brennan to schedule surgery on her left wrist because it was "giving [her] trouble now"

(Tr. 103), she did not identify any limitations this impairment presented or provide any explanation for why she had not sought treatment for her left wrist since the initial diagnosis of carpal tunnel almost two and one-half years earlier. (Tr. 378). Furthermore, Plaintiff testified she could use her right hand while experiencing weakness in that wrist "not very often" and that her hand would only get tired "sometimes." (Tr. 103). Accordingly, substantial evidence supports the ALJ's decision to rely upon Dr. Upadhyay's opinion because it was "generally consistent with the evidence of record including the [Plaintiff's] course of treatment and her testimony as to her activities of daily living." (Tr. 41).

As to her back pain, Plaintiff argues that the ALJ erred because Dr. Upadhyay did not review medical records generated after October 15, 2015. (ECF Doc. No. 12-1 at p. 25). However, it is well established that the mere existence of medical evidence that post-dates the opinion of a state agency reviewing expert does not automatically preclude ALJ reliance on that opinion. See, e.g., Jones v. Astrue, No. 09-206 S, 2010 WL 2326263, at *1-2 (D.R.I. June 2, 2010); Bianco v. Astrue, No. 09-021S, 2010 WL 2382855, at *9-12 (D.R.I. Apr. 20, 2010), adopted, 2010 WL 2465437 (D.R.I. June 14, 2010). Plaintiff must show that a "material change" that post-dates the reviewing expert's opinion precludes the ALJ from reasonably relying on that opinion. Jones, 2010 WL 2326263, at *1 (citing Alcantara v. Astrue, 257 App'x 333, 334 (1st Cir. 2007) (per curiam)); accord Bianco, 2010 WL 2382855, at *11 (citing cases).

Plaintiff suggests a "material change" after Dr. Upadhyay issued his October 2015 opinion based on additional treatment notes from Dr. Brennan (Tr. 517-519), a cortisone injection administered by Dr. Bica (Tr. 448-452), and a remark to Ms. Day that Plaintiff was considering an ablation procedure with Dr. Bica. (Tr. 523, 546). Plaintiff has not shown that these records reflect

a material change in her condition.  Dr. Brennan's two additional treatment notes reflect ongoing treatment for Plaintiff's continuing complaints of back pain.  (Tr. 517-518).  Dr. Brennan also reviewed an April 29, 2016 MRI which he found "demonstrates some disc bulging at several levels, but no acute abnormality, postoperative changes."  (Tr. 517).  Dr. Brennan also concluded that Plaintiff's prognosis was stable lumbar spinal stenosis following fusion surgery and that she was "[o]verall doing about the same" in May 2016.  (Tr. 517).  Dr. Bica met with Plaintiff for an initial evaluation and subsequently administered a cortisone injection on July 28, 2016.  (Tr. 448-452, 522-525).  Dr. Bica stated that an ablation procedure would only be considered if Plaintiff had no response to injections.  (Tr. 523).  On August 19, 2016, however, Plaintiff reported to Dr. Blackmer that the injection provided "some benefit."  (Tr. 414).  While Plaintiff discussed with Ms. Day during a therapy session on January 3, 2017 pursuing the ablation procedure with Dr. Bica (Tr. 546), there is no indication in the record that Plaintiff ever followed up with Dr. Bica about this, or that he would have administered the procedure based on his previous treatment note and Plaintiff's improvement with injection.  Plaintiff has not shown any material worsening of her physical impairments after October 2015 that would render Dr. Upadhyay's opinions to be outdated.

### D.  Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Subjective Complaints

Plaintiff goes on to challenge the ALJ's subjective complaint evaluation, arguing that the ALJ used "boilerplate" language, used "the wrong burden of proof" and failed to provide specific and adequate reason.  (ECF Doc. No. 12-1 at pp. 22-29).  In determining whether the claimant's statements are supported, the ALJ must follow a two-step process.  He must first establish that the

claimant meets the threshold requirement of suffering from an underlying medical impairment which could reasonably be expected to cause the symptoms alleged, including pain. 20 C.F.R. § 416.929; SSR 16-3p, 2016 WL 1119029, at *2. If so, the ALJ will consider other evidence of symptoms, including, but not limited to, daily activities, effectiveness and side effects of medication, and other factors concerning functional limitations. 20 C.F.R. § 416.929; SSR 16-3p, 2016 WL 1119029, at *2. Here, the ALJ properly evaluated Plaintiff's subjective complaints. Irlanda Ortiz, 955 F.2d at 769 ("it is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." (citing Rodriguez, 647 F.2d at 222)).

First, the ALJ articulated the proper two-part standard for assessing a claimant's subjective complaint. (Tr. 33-34). The ALJ noted Plaintiff's hearing testimony regarding her symptoms associated with (1) anxiety, OCD and bipolar disorder, such as her difficulty leaving the house and socializing; (2) her ongoing back pain in spite of spinal fusion surgery and injections; and (3) her difficulty with the grip and strength of her right hand following carpal tunnel release surgery. (Tr. 34). The ALJ then reasonably compared those subjective reports to the objective medical findings of record. As to Plaintiff's physical impairments, the ALJ noted that Plaintiff lifted her son frequently, lumbar x-rays revealed postoperative changes without abnormalities, and Dr. Brennan assessed no swelling or erythema, no tenderness or spasm, negative straight-leg raise, calves were non-tender, distal motor and sensory were grossly intact no thenar or hypothenar atrophy, full range of wrist and finger motion, 2+ radial pulse, and distal neurovascularly intact. (Tr. 37-38). As to her mental impairments, the ALJ noted Plaintiff's social worker described her symptoms as mild, Plaintiff managed her ailments via therapy and medication and Dr. Kisch assessed her as

oriented in all spheres, good judgment, appropriate manner and attitude, normal speech and average intelligence. (Tr. 38). The ALJ also noted that Dr. Hudepohl assigned a GAF score of 65, indicating mild symptoms consistent with the findings from Plaintiff's mental status examinations and her reported activities of daily living. (Tr. 39). In view of the longitudinal medical and non-medical record described above, the ALJ reasonably concluded that, "although the claimant[ ] was forthright during her testimony, the claimant's allegations are not fully supported by the objective findings, examinations and diagnostic tests of record." (Tr. 41). See Bianchi v. Sec'y of HHS, 764 F.2d 44, 45 (1st Cir. 1985) (per ciruam) (the ALJ is not required to accept a claimant's testimony at face value, but rather is entitled to weigh it against other evidence in the record).

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal (ECF Doc. No. 12) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 15) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 27, 2019